IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PHILLIP MORRIS,

    Petitioner,                    No.  CIV S-11-2832 JAM GGH P

    vs.

GARY SWARTHOUT, Warden,       ORDER &

    Respondent.               FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner challenges a 2008 decision[2] by the California Board of Parole Hearings (BPH) finding him unsuitable for parole.   Petitioner was sentenced to a term of 15-years-to-life for second degree murder on December 7, 1992.  Petition, p. 2. Petitioner raises the following as grounds, alleging various violations of his Fourteenth Amendment rights: 1) violation of his state-created liberty interest in parole; 2) violation of due process in the application of the "some evidence" standard; 3) repeated four-year denials in violation of petitioner's plea agreement; 4) the BPH applies an impermissible "underground"

---

[1] This case was transferred from the Northern District.

[2] Petitioner does not specify the date of the parole denial decision clearly but makes some reference to a 2008 parole hearing.

1

policy not in compliance with minimum due process standards; 5) the BPH decision was predetermined and denied in a pro forma hearing; 6) violation of due process because DSL suitability criteria was applied to petitioner who is an "ISL lifer prisoner"; in addition this violates the Ex Post Facto and Equal Protection Clauses; 7) violation of due process, state statute and equal protection and ex post facto clauses because BPH has punished petitioner disproportionately for second degree murder because second degree life offenders have received parole dates under pre-DSL standard; 8) due process violation because BPH refused to recognize the mitigating factors leading to the offense which is unlikely to occur because petitioner was under great emotional distress at the time; 9) due process, equal protection and ex post facto clause violation because BPH "must apply DSL regulations in Register 77 (CRB Rules)" to determine petitioner's parole suitability.  Petition, pp. 6-7.

On January 24, 2011, the United States Supreme Court in a per curiam decision found that the Ninth Circuit erred in commanding a federal review of the state's application of state law in applying the "some evidence" standard in the parole eligibility habeas context. Swarthout v. Cooke, ___ U.S. ___, 131 S. Ct. 859, 861 (2011).  Quoting, inter alia, Estelle v. McGuire, 502 U.S. 62, 67 (1991), the Supreme Court re-affirmed that "'federal habeas corpus relief does not lie for errors of state law.'" Id.  While the high court found that the Ninth Circuit's holding that California law does create a liberty interest in parole was "a reasonable application of our cases" (while explicitly not reviewing that holding),[3] the Supreme Court

---

[3] While not specifically overruling Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), the Supreme Court instead referenced Pearson v. Muntz, 606 F.3d 606 (9th Cir. 2010), which further explained Hayward.  Thus, the Supreme Court's decision in Swarthout, essentially overruled the general premise of Hayward.  When circuit authority is overruled by the Supreme Court, a district court is no longer bound by that authority, and need not wait until the authority is also expressly overruled.  See Miller v. Gammie, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc).  Furthermore, "circuit precedent, authoritative at the time it was issued, can be effectively overruled by subsequent Supreme Court decisions that 'are closely on point,' even though those decisions do not expressly overrule the prior circuit precedent." Miller, 335 F.3d at 899 (quoting Galbraith v. County of Santa Clara, 307 F.3d 1119, 1123 (9th Cir. 2002)).  Therefore, this court is not bound by Hayward.

stated:

> When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication-and federal courts will review the application of those constitutionally required procedures. In the context of parole, we have held that the procedures required are minimal.

Swarthout v. Cooke, at 862.

Citing Greenholtz,[4] the Supreme Court noted it had found under another state's similar parole statute that a prisoner had "received adequate process" when "allowed an opportunity to be heard" and "provided a statement of the reasons why parole was denied." Swarthout v. Cooke, at 862. Noting their holding therein that "[t]he Constitution [] does not require more," the justices in the instances before them, found the prisoners had "received at least this amount of process: They were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied." Id.

The Supreme Court was emphatic in asserting "[t]hat should have been the beginning and the end of the federal habeas courts' inquiry...." Swarthout v. Cooke, at 862. "It will not do to pronounce California's 'some evidence' rule to be 'a component' of the liberty interest...." Id., at 863. "No opinion of ours supports converting California's "some evidence" rule into a substantive federal requirement." Id., at 862. Thus, it appears there is no federal due process requirement for a "some evidence" review and it also appears that federal courts are precluded from review of the state court's application of its "some evidence" standard. Petitioner does not claim he was denied either an opportunity to be heard or a statement of reasons for the BPH determination of his unsuitability for parole. Therefore, claims 1, 2, 4 and 8 must be dismissed.

\\\\\

---

[4] Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 16 (1979).

As to claims 6, 7 and 9,[5] wherein petitioner avers that his constitutional rights have been violated because DSL suitability criteria were applied to him when he is an ISL life prisoner, that second-degree life offenders to whom a pre-DSL standard has been applied have received parole and that the BPH must apply DSL regulations in Register 77 (CRB Rules) to determine petitioner's parole suitability, these claims lack foundation and are meritless. Petitioner is serving a fifteen-year-to life sentence, as noted, for second degree murder pursuant to a conviction that occurred in 1992. Effective July 1, 1977, California repealed its indeterminate sentencing law (ISL). On that date, the Determinate Sentencing Act (DSL) became operative. Petitioner now argues that his constitutional rights are being violated by the failure of the California Board of Prison Hearings (BPH) to set his minimum or base term pursuant to the standards as set in the ISL rather than the DSL. Ironically, petitioner does not appear to meet even the threshold for such a claim inasmuch it is apparent that his 1992 conviction occurred some fifteen years after implementation of the DSL. Moreover, the Ninth Circuit has found that "the DSL guidelines require consideration of the same criteria as did the ISL." Connor v. Estelle, 981 F.2d 1032, 1033-34 & n. 1 (9th Cir. 1992) [citations omitted]. Under the ISL *and* the DSL, "a life prisoner must first be found suitable for parole before a parole date is set." In re Stanworth, 33 Cal.3d 176, 183, 187 Cal.Rptr. 783, 654 P.2d 1311 (1982). "Either the current commitment offense or the offense deemed most serious by the parole panel in the event of multiple-commitment offenses is then selected as the base offense." Id. "The panel then sets a 'base period of confinement,' which under both systems is based solely on the gravity of the base offense." Id. [6]

\\\\\

---

[5] Petitioner's reference in claim 9 to the need to apply "DSL regulations in Register 77 (CRB Rules)" lacks clarity and is insufficient on that ground as well.

[6] Also, not all sentences under the DSL are determinate. A term of years to life under the DSL remains indeterminate because one's eligibility for parole prior to expiration of the maximum sentence is uncertain.

Under the ISL, "suggested base ranges were established for each offense." Id. at 184, 187 Cal.Rptr. 783, 654 P.2d 1311. Under the DSL, "the base term 'shall be established by utilizing the appropriate matrix of base terms ... for the base offense ...' " Id., quoting CAL. CODE REGS. tit.xv, § 2282(a). The ISL and DSL (for indeterminate sentences such as petitioner is serving) both required that the prisoner be found suitable for parole before the base term was set. Id., at 183. Therefore, even if petitioner had been convicted under the ISL scheme, he could not raise a claim challenging the failure of the BPH to apply the ISL base term guidelines until such time as he had been found suitable for parole, which is when his base term would be set.

Because the Ninth Circuit has long determined that "[t]he ISL and DSL guidelines apply identical criteria in determining parole suitability," Connor v. Estelle, 981 F.2d at 1034-35, petitioner's claims of a violation of due process and equal protection with regard to the application of DSL guidelines to him are also without merit. Nor is the ex post facto clause prohibition violated by application of DSL suitability criteria, again even assuming petitioner had standing to raise such a claim.

> We agree with the California courts that have considered the issue and hold that the application of the DSL parole-suitability guidelines to prisoners sentenced under the ISL does not disadvantage them, and therefore does not violate the federal constitutional prohibition against ex post facto laws.

Connor, at 1033–34.

With respect to claim 3, that repeated four-year parole suitability denials are a breach of his plea agreement, this appears to be on the face of it a non-cognizable "some evidence" claim inasmuch as petitioner focuses on an allegation that the denials are primarily based on petitioner's commitment offense rather than on the specific terms of the plea agreement in which he concedes that he pled to a term of 15-years-to-life. Petition, p. 6. Petitioner states that the statute allows parole and that the four-year denials imply that he "is not parolable." Id.

> "Plea agreements are contractual in nature and are measured by contract law standards." *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir.1993). The terms of oral plea agreements are

5

> enforceable, as are those of any other contracts, even though oral plea agreements are not encouraged by reviewing courts. See, e.g., United States v. Monreal, 301 F.3d 1127, 1133 (9th Cir.2002). Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir.2003).

Petitioner has presented no evidence of the terms of any plea agreement other than to claim the standard term of fifteen-years-to-life (which has the real potential for actual life in prison, In re Dannenberg, 34 Cal. 4th 1061, 1097-98, 23 Cal. Rptr. 3d 417, 442 (2005)), nor has he demonstrated entitlement to release upon reaching his minimum sentence. This does not implicate a violation of a plea agreement. This claim will be dismissed but petitioner will be granted leave to amend.

As to claim 5, in asserting that the hearing at which his parole was denied was "pro forma" and the decision "predetermined," petitioner appears to be attempting to raise a claim of bias. Petition, p. 7. Under the due process clause a person is entitled "to an impartial and disinterested tribunal in both civil and criminal cases." Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610 (1980); Schweiker v. McClure, 456 U.S. 188, 195, 102 S. Ct. 1665 (1982) ("due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities"). However, beyond petitioner's bare statement, petitioner provides no factual predicate in support of a claim of bias. See O'Bremski v. Maass, 915 F.2d 418, 423 (9th Cir. 1990), citing Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 757 [] (1963),[7] for the principle that a petitioner must "'allege[ ] facts which, if proved, would entitle him to relief.'" This conclusory and unsupported claim will be dismissed with leave to amend.

Accordingly, IT IS IT IS HEREBY ORDERED the petition is dismissed with leave granted for petitioner to file, within thirty days of the date these Findings and Recommendations are adopted, an amended petition with respect to claims 3 and 5 only. Failure to do so will result in a recommendation of dismissal of this action.

---

[7] Townsend was overruled on another ground by Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S. T. 1715 (1992).

IT IS RECOMMENDED that claims 1, 2, 4, 6, 7, 8 and 9 be dismissed with prejudice from the petition.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, petitioner may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 21, 2012

/s/ Gregory G. Hollows
_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
morr2832.prl